Frank Chaloupka, Appellee, v. George Lacina,
Appellant.

Gen. No. 40,171.

Opinion filed June 28, 1939. Rehearing denied July 11, 1939.

GRABLOWSKI & KANAK, of Chicago, for appellant;
H. L. CAVENDER, of Chicago, of counsel.

ANTON ZEMAN, of Chicago, for appellee; ELWYN E.
LONG, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the
court.

Plaintiff sued defendant in an action for slander.
A jury returned a verdict finding the issues for plain-
tiff and assessing his damages at $500. Defendant ap-
peals from a judgment entered upon the verdict.

The complaint alleges: "1. That on to-wit, February 24, 1936, . . . defendant contriving and maliciously intending to injure plaintiff, and to bring him into public scandal and disgrace, in a certain discourse which defendant then and there had, of and concerning plaintiff, in the presence and hearing of divers persons, falsely and maliciously, in the presence and hearing of divers persons, who then and there understood the Bohemian language, spoke and published, of and concerning plaintiff, the false, scandalous, malicious and defamatory words, following, in said Bohemian language, that is to say 'On me kradl kaffe, proto jsem ho pustil'; which said words signified and meant, in the English language, as follows, that is to say 'He (meaning the plaintiff), stole my (meaning defendant's) coffee. That is why I (meaning the defendant) discharged him (meaning the plaintiff).' 2. That by means of the committing of which several grievances by defendant, plaintiff has been and is greatly injured in his good name and reputation and brought into public scandal and disgrace; and has been and is shunned and avoided by divers persons, and has been and is otherwise injured; Wherefore plaintiff demands judgment of defendant for Ten Thousand Dollars and the costs of this suit." Defendant's answer denies the allegations contained in paragraphs 1 and 2 of plaintiff's complaint, "and for a defense to this action, defendant alleges: 1. That defendant on the date alleged in the complaint and a long time prior thereto, conducted a general bakery business, and in addition thereto, sold coffee packed in one pound packages to the public. 2. That plaintiff had been, for some time previous to the time mentioned in the complaint, employed by defendant as a baker under a contract of employment with the Bakery and Confectionery Workers' International Union Local 13. 3. That for sometime prior to the date mentioned in the complaint on divers occasions, numerous one pound packages of coffee had

been found missing at defendant's place of business. 4. That on to-wit: February 22, 1936, defendant's brother informed this defendant that he had seen plaintiff take one package of coffee at defendant's place of business. 5. That defendant, acting upon such information, on to-wit: the date last mentioned, in the presence of other persons, questioned plaintiff regarding the taking of the coffee and plaintiff then and there admitted that he had taken said package of coffee with the intention of appropriating the same to his own use, without paying for same; that said defendant thereupon informed plaintiff that under the circumstances, he could no longer retain him as an employee, and then and there discharged plaintiff. 6. That thereafter, the officials of said Union, as agents and representatives of plaintiff, and on behalf of plaintiff, called at defendant's place of business and made inquiries of defendant as to his reason for the discharge of plaintiff; that in answer to such inquiry and in good faith, without malice, defendant stated to said officials the matter complained of in the complaint, solely for their information and that this defendant had reasonable cause to believe that all the matters so stated were true and that he believed them at the time to be true, and that said officials stated to defendant that it was necessary that they be informed of the facts in accordance with the custom of the Union rules and in accordance with defendant's contract for the employment of the members of said Union.''

Defendant contends, *inter alia,* that ''the trial Court erred in denying the motions of the defendant for an instructed verdict. (a) The words spoken of the plaintiff were privileged communications. (b) The words spoken of the plaintiff were not actionable per se, and there is no evidence of malice.'' Defendant strenuously argues that there is no competent evidence in the record to justify submitting the case to the jury. Plaintiff is by trade a cake baker and was employed by

defendant, who conducted a union bakery shop. Plaintiff was a member of the Bakery and Confectionery Workers' International Union Local 13. All of the bakery help employed by defendant was furnished by that union, and it is conceded that if defendant discharged any of his help who were members of that union defendant was required to state to the union his reason for the discharge of the employee. It is apparent from the evidence that this rule was adopted to prevent an employer from unjustly discharging an employee who was a member of the union. On February 22, 1936, a brother of defendant, who was also employed by the latter as a baker and who worked with plaintiff, informed defendant that he had seen plaintiff taking a package of coffee. After defendant had had a talk with plaintiff he paid plaintiff his wages for the week and discharged him. Defendant's evidence tends to show that in the conversation at the time of the discharge plaintiff admitted taking the coffee. Plaintiff testified that he told defendant that he did not steal the coffee. Defendant thereupon called up the union and asked it to send him a baker. This was in accordance with the rules of the union. William K. Hochmal, the representative of the union, testified for plaintiff and appears to have been a fair and impartial witness. He testified that plaintiff, after his discharge, appeared at the union headquarters and reported that he had been discharged by defendant and told the witness to go to defendant's place of business and find out why plaintiff was discharged; that as ''the representative of the union it was my duty to find out why the man was discharged,'' and that is why the witness called upon defendant in reference to the matter. The witness further testified that he called upon defendant and told him that he came there as a representative of the union to find out why plaintiff was discharged and that it was upon this inquiry that defendant made the statement upon which plaintiff predicates his claim; that the conversation between the witness and defendant was car-

ried on in the Bohemian language; that in answer to the witness's question defendant answered: "On me kradl kafe proto jsem ho pustil." The attorneys for the parties agreed that the said Bohemian words mean, in the English language (attorney for plaintiff interpreting): " 'He stole my coffee and I had to fire him.' Is that right (to Mr. Kanak) [attorney for defendant]? Mr. Kanak: 'They discharged me.' " Plaintiff conceded upon the oral argument that if defendant's statement to the union agent had been made to the latter when no other person than defendant and the agent was present, the statement would be qualifiedly privileged, unless plaintiff proved express malice or malice in fact upon the part of defendant in making the statement. It is also conceded that under the rules defendant was obliged to give his reason for discharging plaintiff. But, *a fortiori*, although defendant had told him at the time of the discharge that he, plaintiff, had stolen defendant's coffee, nevertheless, plaintiff asked the agent of the union to go to defendant and find out why he, plaintiff, was discharged. It appears, therefore, that plaintiff sought to have defendant make the statement in question to the agent. As to the point that defendant should not have made the statement to the agent in the presence of others: The testimony of the agent on that point is as follows: "Q. When you came into Mr. Lacina's place of business on this particular day who was present there at that particular time when you talked to him? A. Well, I don't recall—I think it was Mrs. Lacina and Mr. Bennish—that is his brother-in-law. Q. And they were in hearing distance so they heard what he said and what you said? A. They were around the place. I don't know whether they heard or didn't. . . . I say Mrs. Lacina was around—she was in the kitchen and out and Mr. Bennish was working." As to the instant point, therefore, the evidence fails to show that either Mrs. Lacina or Mr. Bennish heard what was said between defendant and the agent. Mr. Bennish (Benes) testified as a witness for defendant

but plaintiff's counsel did not see fit to interrogate him as to whether or not he heard the conversation between defendant and the union agent. Mrs. Lacina, the wife of defendant, did not, of course, testify. But plaintiff contends that the instant action lies because the proof shows express malice or malice in fact by defendant in making the statement. It is a familiar rule of law that actual or express malice is not presumed but must be proved. We find no competent evidence in the record to sustain the claim that defendant was actuated by malice in making the statement in question to the union agent.

It is a settled rule of law that the question as to whether or not the statement was privileged is one for the court and not for the jury. (See *Haskell v. Perkins,* 165 Ill. App. 144, 150.) The contention of defendant that the court should have directed a verdict in favor of defendant is a meritorious one, and the judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*

John J. Sullivan, P. J., and Friend, J., concur.