Donald A. HELLESEN, Appellant,

v.

KNAUS TRUCK LINES, INC., Respondent.

No. 49845.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1963.

Frank O. Benson, Quinn, Peebles & Hickman, Kansas City, for appellant.

John C. Russell, Donald E. Raymond, Kansas City, for respondent.

EAGER, Judge.

In this case the trial court sustained a motion to dismiss, and dismissed plaintiff's first amended petition with prejudice. The suit is one for libel. We have jurisdiction because the prayer of the petition is for $30,000. The petition alleged: that plaintiff was employed by defendant as an over-the-road truck driver, and that he was a member of Local 41 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (which we shall hereafter refer to as Teamsters); that the contract setting forth the "terms and conditions" of plaintiff's employment contained in Article X the following: "The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union affected, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty or drunkenness, or recklessness resulting in serious accident while on duty, or the carrying of unauthorized passengers. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from date of said warning notice. Discharge must be by proper written notice to the employee and the Union affected." Plaintiff then alleged that on June 28, 1960, one F. E. Crowder, defendant's agent, acting within the scope of his agency, willfully, wrongfully and maliciously published concerning plaintiff the following letter, alleged to be false, defamatory and libelous:

"Mr. Donald A. Helleson 3238 Independence Ave. Kansas City, Missouri Dear Sir: On June 10, 1960, you were a member of a sleeper team who delivered a load of wheat at the Beardstown Mills Company, Beardstown, Illinois. Starting on that date, a survey or check of peddle time was conducted lasting for two weeks, report of which was recently received by this office. The report reveals that your actual peddle time was twenty-five minutes, you charged this company one and one half hours as evidenced by your pay sheet and log book. Penalties for dishonesty are clearly outlined in Article X of the Central States Area Over-the-Road Motor Freight Agreement; however, this Company elects to reduce the severity of the penalty of this instance. In view of the

above-mentioned facts, I am issuing this warning letter for dishonesty as outlined in Article Z of the Over-the-Road Agreement. Should this occur in the future, more severe disciplinary action will be necessary. Yours very truly, KNAUS TRUCK LINES, INC., F. E. Crowder, Safety Supervisor, FEC:gm CC: Local Union #41."

Plaintiff further alleged: that the letter was published "by placing said copy in defendant's files and records * * *" and by causing a copy "to be mailed and delivered to said Teamsters Local Union No. 41 in Kansas City, Missouri" where it became a part of plaintiff's union record; that the letter falsely attributed to plaintiff the commission of a "fraud, theft and embezzlement, and of stealing by means of deceit, * * *" the latter being a crime under §§ 560.156 and 560.161, RSMo 1959, V.A.M.S.,[1] as amended; that the letter directly tended to prejudice plaintiff in his trade and employment (as elaborated somewhat in the petition) and tended to expose him to public hatred, contempt and ridicule (also amplified) in violation of § 559.410; that plaintiff's reputation was thus blackened, he was humiliated, and that his ability to acquire and retain jobs had been affected. Compensatory damages of $15,000 were sought, along with punitive damages in the same amount. The motion to dismiss was predicated upon the ground that the petition failed to state a claim upon which relief could be granted. We gather that "peddle time" means time spent in waiting for a truck to be unloaded, though the briefs do not elaborate.

Since no special damages are pleaded, the letter must have constituted a libel per se in order to be actionable. Langworthy v. Pulitzer Publishing Co., Mo., 368 S.W.2d 385; Nordlund v. Consolidated Electric Co-Op., Mo., 289 S.W.2d 93, 57 A.L.R.2d 832. In such a situation we consider the words of the letter, stripped of extraneous allegations. Langworthy, supra. And always, the words are to be considered in their "ordinary meaning in the plain and popular sense," and the instrument "must be interpreted from its four corners." Jacobs v. Transcontinental & Western Air, Inc., 358 Mo. 674, 216 S.W.2d 523, 525, 6 A.L.R. 2d 1002.

Plaintiff asserts here that the letter did constitute a libel per se, both as (a) imputing the commission of a crime, i. e., stealing under § 560.156, and (b) as tending to disgrace and degrade plaintiff, expose him to public hatred, contempt and ridicule, and as reflecting on his integrity, character and good name. As to (a), he cites generally Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596; Starnes v. St. Joseph Railway, Light, Heat & Power Co., 331 Mo. 44, 52 S.W.2d 852; and Priest v. Central States Fire Ins. Co., 223 Mo.App. 122, 9 S.W.2d 543. Those cases are applicable here only as stating general principles, with perhaps the further proposition that the specific crime need not be named if the language used is susceptible only of the construction that some crime is charged. As to (b), we note § 559.410 defining the term libel; that statute primarily concerns criminal libel, but it has been held that the definition is applicable both in criminal and civil cases, and that " * * * any false, unprivileged, written communication which, reasonably construed, comes within the statutory definition is libelous per se. Seested v. Post Printing & Publishing Co., 326 Mo. 559, 575, 31 S.W.2d 1045, 1052 [4–7.]" Coots v. Payton, Banc, 365 Mo. 180, 280 S.W.2d 47, loc. cit. 53. But the article (or letter) must be one defamatory in itself before the provisions of this statute attach. Coots v. Payton, Banc, 365 Mo. 180, 280 S.W.2d 47; Langworthy v. Pulitzer Publishing Co., Mo., 368 S.W.2d 385. Defendant argues that this letter was not libelous: (a) because the petition alleged no special damages and the allegations cannot constitute a libel per quod; and (b) because, considered from the standpoint of a libel per se, the innuendo asserting the charge of a crime cannot enlarge the words actually

1. All statutory citations will refer to this revision.

used (Grossman v. Globe-Democrat Pub. Co., 347 Mo. 869, 149 S.W.2d 362), and because the letter did not charge that plaintiff had acquired any money or property of defendant wrongfully, or even that the log book and pay sheet were the basis of computing plaintiff's wages; further, that only by a strained construction could the letter be construed as an accusation of a crime. Our "stealing" statute has not been effective long enough to have been the subject of many constructions; it is not necessary to construe it specifically here. For the present purpose we shall assume that the letter charged plaintiff with the crime of acquiring or stealing defendant's property by deceit, or of an attempt to do so. See, on the latter, § 556.150. We note also that the letter referred to "Penalties for dishonesty" as outlined in Article X of the labor contract, and also that the letter was issued as a "warning letter for dishonesty * * *."

■ The real questions here involve the doctrines of qualified privilege and consent. The issues have been confused somewhat by arguments pro and con that there was and was not an actionable publication but, upon analysis, it seems obvious that what defendant's counsel really mean is that such publication as was made was fully protected, while plaintiff's counsel insist that there was a publication, protected only by a qualified privilege. At this point we note that although plaintiff alleged generally that the defendant's agent wrote and *"published"* the supposed libelous words, when we read the petition from its "four corners" we find that this generally stated conclusion is limited by the specific allegations that defendant "published" the letter by placing a copy in its files and by mailing a copy to the Teamsters Local. We shall only consider these specific allegations. Farm & Home Savings & Loan Ass'n of Missouri v. Armstrong, 337 Mo. 349, 85 S.W.2d 461, 464–465; Coble v. Economy Forms Corp., Mo.App., 304 S. W.2d 47, 53.

The petition discloses that plaintiff belonged to Local 41 of the Teamsters; his union will be conclusively presumed to have been his agent in negotiating and executing the labor contract. That contract required a warning notice before any discharge or suspension, *with a copy to the union*, except in case of a discharge for dishonesty, drunkenness, recklessness on duty, etc. Here the defendant *elected* to give a warning notice in a situation where it was probably not required to do so; but its election *not* to discharge plaintiff immediately and to give a notice was for his benefit, and we think that the defendant was fully justified in electing the more lenient course. Having properly done so, a copy of the letter was necessarily sent to the Local of the Union. Defendant could (and undoubtedly would) have discharged plaintiff by precisely the same kind of letter it used here.

■ We shall dispose first of the contention that defendant effected an actionable publication of the alleged libel by placing a copy in its files; we are cited to no case, pro or con, specifically in point. While there seems to be some divergence of thought on the subject generally, it appears to be the better and majority rule that communications between officers of the same corporation in the due and regular course of the corporate business, or between different offices of the same corporation, are not publications to third persons. Biggs v. Atlantic Coast Line R. Co. (CA 5), 66 F.2d 87, citing many cases; Rodgers v. Wise, 193 S.C. 5, 7 S.E.2d 517; Prins v. Holland-North America Mortgage Co., 107 Wash. 206, 181 P. 680, 5 A.L.R. 451; George v. Georgia Power Co., 43 Ga.App. 596, 159 S.E. 756; Chalkley v. Atlantic Coast Line R. Co., 150 Va. 301, 143 S.E. 631; Lehner v. Associated Press, 215 Wis. 254, 254 N.W. 664. As said in Prins, supra, such an act by a corporation "is but communicating with itself." If such is the correct rule, then certainly a corporation which, through its regularly assigned agent, writes a letter in the due course of its business and places a copy in its own files, does not thereby publish the supposed libel to a third person. We so hold. To rule otherwise would pe-

nalize a business, individual or corporate, for performing a perfectly normal and proper business practice.

■ · We next consider the sending of a copy of the letter to the Teamsters' Local. Plaintiff concedes that this act was qualifiedly privileged, but insists that he is entitled to a trial to permit a showing of malice and an abuse of the privilege. He cites Coots v. Payton, Banc, 365 Mo. 180, 280 S.W.2d 47; Laun v. Union Electric Co. of Missouri, 350 Mo. 572, 166 S.W.2d 1065, 144 A.L.R. 622; Boehm v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 710; and he insists that there was and is no absolute privilege. Construed in its technical sense, "absolute privilege" means that under certain circumstances, as in legislative and judicial proceedings, it is in the public interest to permit interested persons to speak freely and without fear of suit for defamation. The occasions are rather strictly limited, and in those instances even malice does not create liability. See the discussion in Laun v. Union Electric Co. of Missouri, 350 Mo. 572, 166 S.W.2d 1065, 144 A.L.R. 622. Occasions of qualified privilege occur much more often but the privilege is also much more limited. In Polk v. Missouri Pac. R. Co., 156 Ark. 84, 245 S.W. 186, the Court said, loc. cit. 188, 29 A.L.R. 220: "'A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matter which, without such privilege, would be actionable. Upon such occasion and under such circumstances, although the matter communicated is defamatory and false, the law will not infer malice, but the existence thereof must be shown by some evidence beyond the falsity of the statements communicated.'" Our cases follow the same rule. Coots v. Payton, Banc, 365 Mo. 180, 280 S.W.2d 47; Boehm v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 710. Generally, it is for the court to decide whether the circumstances are such as to give rise to a qualified privilege,—at least, in the absence of any controversy as to the character of the surrounding circumstances and relationships. Chaloupka v. Lacina, 301 Ill.App. 173, 21 N.E.2d 909. In such cases, however, if a fact issue is raised on the existence of good faith or malice, or on whether or not the statements made exceed the exigencies of the situation so as to constitute an abuse of the privilege, such fact questions are for the jury. Coots, supra; Boehm, supra. If the question of qualified privilege were the decisive factor here, as plaintiff insists, we would be required to decide whether enough is alleged in this petition to raise an issue of fact on the questions of good faith, malice and excess of the requirements of the situation. Many petitions do present such fact issues, Coots, supra; some do not, and we have considerable doubt that the present one does, since the vital factual allegations are based on pleaded documents.

However, another principle is decisive here. We quote from Restatement of Torts, Ch. 25, § 583, p. 220 et seq., as follows: "General Principle. Except as stated in § 584, the publication of false and defamatory matter of another is absolutely privileged if the other consents thereto. * * * f. The privilege conferred by the consent of the person about whom the defamatory matter is published is absolute. The protection given by it is complete and it is not affected by the ill will or personal hostility of the publisher or by any improper purpose for which he may make the publication, unless the consent is to its publication for a particular purpose in which case the publication for any other purpose is not within the scope of the consent."

■ In 33 Am.Jur., Libel & Slander, § 93, pp. 105–106, it is said: "It is generally held that the publication, of a libel or slander, invited or procured by plaintiff, or by a person acting for him in the matter, is not sufficient to support an action for defamation. Thus, the delivery of a letter of recommendation for a former employee

to a person who, by his authority, requested it is not a publishing of any libel contained in it. Again, there is no publication where communications, concerning the cause of discharge, are made by an employer or his agent to one procured by a discharged employee to intercede for his reinstatement." See, also, 53 C.J.S. Libel and Slander § 95, p. 151, where it is said: "When no previous publication has been made, the publication is, as a general rule, privileged if the fact appears that the particular publication under consideration was procured or invited by plaintiff or his authorized agent, and if the answer of defendant does not go beyond plaintiff's question; * * *." The true meaning of the principle seems to be that in such cases there is no actionable publication, or that the publication is absolutely privileged (though not in the technical sense of "absolute privilege"), which really amounts to the same thing.

We have found no Missouri cases actually announcing this principle. Applicable, at least by analogy, are: McDaniel v. Crescent Motors, 249 Ala. 330, 31 So.2d 343, 172 A.L.R. 204; Taylor v. McDaniels, 139 Okl. 262, 281 P. 967, 66 A.L.R. 1246; Wuttke v. Ladanyi, 226 Ill.App. 402. In McDaniel, the allegedly slanderous statements were made to the business agent of plaintiff's union and in the presence of two other representatives of the defendant; it was held that the union representative was acting as plaintiff's agent and that such a publication would not support an action for slander. In Taylor, an allegedly libelous letter concerning plaintiff was written by defendant's Division Superintendent to a representative of the plaintiff's Brotherhood, and the Brotherhood file containing the letter was sent to plaintiff's local at his own request. It was held there that the Brotherhood official was plaintiff's agent, it appearing that he had intervened concerning plaintiff's discharge and that he had requested the information on plaintiff's behalf and at plaintiff's instigation. It was thus held that there could be no actionable defamation in writing and sending the letter initially, and also,

that the same protection was to be accorded to the transmittal of the letter to the local lodge for a hearing, since plaintiff had requested it. In those cases it was indicated that the court did not reach any question of qualified privilege, because there had been no actionable publication. In Wuttke v. Ladanyi, supra, the court said, in part, loc. cit. 405–406: "It would be a dangerous precedent to hold that an employer could not, privately and confidentially, give an explanation bona fide to a discharged employee, or his representative, who has solicited an explanation of the discharge, without laying himself open to the charge of slander. The alternative would be that he must refuse to explain or must give some fictitious excuse, which would be unfair to the employee."

Plaintiff has cited: Massee v. Williams (CA 6), 207 F. 222; Richardson v. Gunby, 88 Kan. 47, 127 P. 533, 42 L.R.A.,N.S., 520; Alabama & Vicksburg R.R. Co. v. Brooks, 69 Miss. 168, 13 So. 847; Brown v. Elm City Lumber Co., 167 N.C. 9, 82 S.E. 961, L.R.A.1915E, 275. The Massee case was decided largely on a question of qualified privilege; it also held that a publication to plaintiff's agent was sufficient; but the facts there were vastly different from ours, and the case has little applicability. The essential holding was that the evidence at the trial disclosed that defendant had far exceeded the limits of his qualified privilege. Richardson, supra, seems wholly inapplicable; Brooks, supra, was decided on the proposition that the defendant's charges exceeded the bounds of a qualified privilege; that rule was applied to defendant's answer to an inquiry made by plaintiff's attorneys. The case may be opposed in result to the stated theory of consent; however, it is a very old case and the doctrine of consent is not even discussed. In Brown, supra, the letter was held to be a legitimate answer to an inquiry or claim from plaintiff's attorney, in which more "latitude" is allowed; the letter was held thus to be qualifiedly privileged, even though "published" by sending it to plaintiff's attorneys.

That case is of no help to plaintiff. We do not construe these cases (except possibly Brooks, 1891) as substantially opposed to the rule of consent as previously outlined. If they are, we do not choose to follow them.

 Plaintiff's counsel, in their reply brief, argue that the Missouri cases adhere to the theory of qualified privilege. Hoeffner v. Western Leather Clothing Co., Mo. App., 161 S.W.2d 722; Boehm v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 710. True, we find no Missouri case expressly decided upon the theory of consent, but the doctrine is well established and it is applicable here. We have determined that, through the Union Contract, plaintiff consented to the sending of this letter to the Local. It was a communication which directly involved the employer-employee relationship. It was related strictly to matters covered by the contract. We hold that under these circumstances the statements therein were fully privileged. Plaintiff cites no case to the contrary; he contends that the result in such cases as Hoeffner and Boehm, supra, are opposed to the ruling here. As already indicated, however, those cases were decided strictly on the question of qualified privilege and the exceeding of the privilege; the doctrine of consent was not even discussed, and the circumstances were such as to make the application of that doctrine at least most doubtful, had it been an issue.

There are certainly no factual allegations here in the petition or in the documents pleaded to show or fairly infer any *abuse* by defendant of the circumstances of the consent, if that can be an issue. Counsel argue here that defendant was not required by the contract to write this letter and that it merely chose to do so. We have already touched on that subject; upon the disclosure of the facts defendant had the choice of discharging plaintiff immediately, and by a very similar letter, or of writing as it did. We have and do hold that its choice was lawful and proper. It is also urged that a consent did not include a consent to a defamation; the authorities already discussed hold that if plaintiff consented to the sending of a letter under such circumstances, he thereby took his chances on that score. We do not have a case where a defendant has obviously taken advantage of the situation to abuse and villify the plaintiff, outside the "exigencies" of the situation. There will be time enough to rule that point when and if we reach it.

Under these circumstances there is no point in discussing in detail the cases plaintiff has cited on the doctrine of qualified privilege. Finding no error in the order of dismissal, that judgment is affirmed.

All of the Judges concur.