**Ronald WASHINGTON, Respondent,**

v.

**William A. THOMAS & W.A. Thomas & Company, Inc., Appellants.**

No. 54737.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 5, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 10, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Mayer S. Klein, Clayton, for appellants.

Donald Bigelow Balfour, Howard Allen Wittner, Clayton, for respondent.

CARL R. GAERTNER, Judge.

Defendants W.A. Thomas & Company, Inc. and W.A. Thomas appeal from the judgment entered against them in plaintiff Ronald Washington's suit for libel.

For a better understanding of the facts giving rise to this litigation we commence with an identification of the parties involved:

Lucas Heights Village I, Ltd., a limited partnership, owner of Lucas Heights Village, a 192–unit apartment complex.

Lucas Heights Redevelopment Corporation, the corporate general partner of Lucas Heights Village I, Ltd.

Joseph M. Brown, president of Lucas Heights Redevelopment Corporation.

Reverend R.L. Fisher, individual general partner of Lucas Heights Village I, Ltd., Bishop of the African Metropolitan Episcopal Zion Church.

W.A. Thomas & Co., Inc., a corporation, a management consulting firm under contract with Lucas Heights Village I, Ltd., to manage and operate the apartment complex.

W.A. Thomas, president of W.A. Thomas Co., Inc.

Turner Lacey, employed by W.A. Thomas Co., Inc., as director of operations.

Stephanie Stafford, employed by W.A. Thomas Co., Inc., as executive manager of the apartment complex.

Ronald Washington, a supervisor of maintenance and resident manager of the apartment complex.

On August 17, 1982, Mr. Washington was fired after a dispute with Stephanie Stafford, his immediate supervisor, over the vacation policy of W.A. Thomas & Co., Inc. Ms. Stafford testified that she refused Mr. Washington's request for a vacation, and when he reacted in an insubordinate manner, she fired him. She testified that she felt physically threatened when he yelled incoherently, pushed books off of a file cabinet, and threw his keys at her.

After this incident Mr. Washington went to his home. He testified that he placed pieces of a disassembled pistol in an envelope and brought it to Reverend Fisher. Mr. Washington explained at trial he wanted this pistol out of his possession because Ms. Stafford knew he owned a gun and he did not want to be falsely implicated in threatening her with the pistol. He claimed he never threatened Ms. Stafford. Reverend Fisher testified that Mr. Washington came to his office with what appeared to be a fully operative loaded pistol. He recalled Mr. Washington explained he gave him the pistol so he wouldn't blow Ms. Stafford's head off. He obtained the

pistol from Mr. Washington, removed the bullets and placed the pistol and the bullets in an envelope.

Reverend Fisher promptly reported the details of this meeting with Mr. Washington to Turner Lacey. Reverend Fisher testified he told Lacey, "Ron is going around with a gun threatening to blow Stephanie Stafford's head off." Turner Lacey reported this information to Stephanie Stafford who in turn advised W.A. Thomas later that day. At Mr. Thomas's direction she wrote a letter to Mr. Washington dated August 17, 1982, advising him that his employment was terminated because of his "lack of following instructions and harsh misconduct relating to a company policy."

The next day Stephanie Stafford prepared a typewritten memorandum based in part upon the information she had received from Turner Lacey. She filed this document in Mr. Washington's personnel file.

On August 26, 1982, W.A. Thomas wrote a letter to Mr. Washington in which he refused a requested meeting because:

1. Your dismissal was not based on disputed company policies, but rather the *belligerent behavior* and *unacceptable attitudes* displayed at a meeting with your immediate on-sight [sic] supervisor on the morning of August 17, 1982.

2. The whole incident of the weapon charge and implications resulting from the same.

Copies of this letter were directed to Reverend Fisher, Joseph Brown, Stephanie Stafford, and Turner Lacey.

On that same date, August 26, 1982, W.A. Thomas responded by letter to the Missouri Division of Employment Security protesting Mr. Washington's claim for unemployment benefits. This letter stated Mr. Washington's employment had been terminated because of his "threat to do bodily harm with a loaded weapon, misconduct to his immediate supervisor … and the belligerent actions concerning office policy…." Included as an attachment to this letter was a copy of the memorandum Stephanie Stafford had placed in Mr. Wash-

ington's personnel file. No copies of this letter were distributed.

On September 7, 1982, in response to Mr. Washington's request for a service letter, Turner Lacey sent him a letter including as attachments the Stafford memorandum, her letter of August 17, 1982, and the W.A. Thomas letter to Mr. Washington of August 26, 1982. Copies of Lacey's letter, including the attachments, were sent to Reverend Fisher.

The case was tried upon the allegations of plaintiff's first amended petition. In Count I, entitled "Prima Facie Tort," plaintiff alleged that he was employed by W.A. Thomas & Co., Inc., "and/or" Lucas Heights Redevelopment Corporation, that he was wrongfully discharged and prayed for actual and punitive damages against those corporate defendants. In each of four additional counts plaintiff alleged that his character was defamed and his reputation damaged by the malicious publication of documents "accusing plaintiff of threatening to do bodily harm with a loaded weapon to his superiors." Count II alleged such a publication by W.A. Thomas & Co., Inc. through its agent W.A. Thomas and sought actual and punitive damages from those two defendants. Count III alleged the same publication was made by W.A. Thomas & Co., Inc. through its agent Turner Lacey and sought actual and punitive damages from those two defendants. Count IV alleged the same publication was by W.A. Thomas & Co., Inc. through its agent Stephanie Stafford and sought actual and punitive damages from those two defendants. Count V alleged, as an alternative to Count IV, that the publication was by Lucas Heights Redevelopment Corporation and its agent Stephanie Stafford, if she was not an employee of W.A. Thomas & Co., Inc., and sought actual and punitive damages against Lucas Heights Redevelopment Corporation and Stephanie Stafford. Each of these counts alleged the publication of the documents "injured plaintiff in his good name, reputation and business and have accused him of committing a crime." No special damages were alleged.

On the fifth day of trial after the conclusion of all the evidence, plaintiff dismissed Count V, and his claims against Turner Lacey in Count III and against Stephanie Stafford in Count IV. The trial court sustained the corporate defendants' motion for directed verdict on Count I, the wrongful discharge—Prima Facie Tort count. The remaining three counts were submitted to the jury: Count II based upon the allegedly defamatory publication by W.A. Thomas to Reverend Fisher and/or Joseph Brown, Count III based upon the allegedly defamatory publication by Turner Lacey to Reverend Fisher and/or Joseph Brown, and Count IV based upon the alleged defamatory publication by Stephanie Stafford to Reverend Fisher and/or Joseph Brown. The jury found in favor of plaintiff on each count and assessed actual damages of $13,333 and punitive damages of $66,666 on each count.

On appeal appellants assert trial court error in denying their motions for directed verdicts and for judgment notwithstanding the verdicts, arguing the failure of plaintiff to prove unprivileged publication, malice, and actual damages. In the alternative appellants seek a new trial because of instructional error.

We look first to the charge of libel based upon the allegations of Count II in the amended petition that W.A. Thomas as agent of W.A. Thomas & Co., Inc., published documents "accusing plaintiff of threatening to do bodily harm with a loaded weapon to his superiors." This count was submitted to the jury under instruction # 8, as follows:

> Your verdict must be for Plaintiff and against Defendants W.A. Thomas and W.A. Thomas & Co., Inc., if you believe:
> First, Defendant W.A. Thomas stated in a letter that Ronald Washington threatened another person with bodily harm with a loaded weapon, and
> Second, such statement was false, and,
> Third, Defendant W.A. Thomas wrote the letter either: with knowledge that it was false or with reckless disregard for whether it was true or false at the time when Defendant W.A. Thomas had seri-

ous doubt as to wherherh [sic] it was true, and

Fourth, such statement tended to expose Plaintiff to hatred, contempt or ridicule or deprive the Plaintiff of the benefit of public confidence and social associations, and

Fifth, such statement was read by Richard L. Fisher and/or Joseph M. Brown, and

Sixth, Plaintiff's reputation was thereby damaged.[1]

■ Two letters written by W.A. Thomas were introduced into evidence. In one, the letter of August 26, 1982, to the Missouri Division of Employment Security, Thomas referred to "Mr. Washington's threat to do bodily harm with a loaded weapon, misconduct to his immediate superior." Publication of this letter to the Missouri Division of Employment Security is absolutely privileged pursuant to § 288.250 RSMo.1986 which provides "any information obtained by the Division in the administration of this law shall be privileged and no individual or type of organization shall be held liable for slander or libel on account of such information." *Tucker v. Delmar Cleaners, Inc.*, 637 S.W.2d 222, 224 (Mo.App.1982). Mr. Thomas did not send or deliver a copy of this letter to any person other than the Division of Employment Security. Placing a copy of this letter in the corporation's files does not constitute publication. *Ellis v. Jewish Hosp. of St. Louis*, 581 S.W.2d 850 (Mo.App.1979). In short, although W.A. Thomas wrote the letter containing the statement alleged in the petition, and although Reverend Fisher read the letter as submitted in Instruction # 8, W.A. Thomas did not publish this letter. He published a different letter also dated August 26, 1982, but this published

letter did not contain the statement alleged to be defamatory. An essential element of the tort of defamation is that the alleged defamatory material be communicated or published by the alleged wrongdoer. *Jones v. Pinkerton's, Inc.*, 700 S.W.2d 456, 458 (Mo.App.1985); W. Prosser, *Torts*, at 766 (1971). The evidence fails to show that W.A. Thomas communicated or published the statement that plaintiff threatened another person with bodily harm with a loaded weapon to Reverend Fisher or to Joseph Brown. Accordingly, the judgment against W.A. Thomas & Co., Inc., and W.A. Thomas on Count II based upon the conduct of W.A. Thomas must be reversed.

■ The same is true regarding the judgment on Count IV, based upon the conduct of Stephanie Stafford. She wrote the memorandum detailing the argument with Mr. Washington, his discharge, and his subsequent meeting with Reverend Fisher as related to her by Turner Lacey. She placed this memorandum in Mr. Washington's personnel file, which does not constitute publication. *Ellis v. Jewish Hosp.*, supra. She did nothing more. The writing of false and defamatory statements does not constitute the tort of libel unless and until the writing is communicated or published. *Heberholt v. dePaul Community Center*, 625 S.W.2d 617, 624 (Mo. banc 1981). Since she did not publish the memorandum, she did not commit a legally cognizable wrong. Accordingly, her employer cannot be held derivatively liable by reason of her conduct.

■ The remaining count submitted to the jury, based upon the allegations of Count III of the amended petition that W.A. Thomas & Co., Inc. by its agent Turner Lacey, defamed plaintiff by publishing

---

1. The copy of Instruction # 8 in the Legal File states that it is patterned after MAI 23.10(2), the approved instruction for the submission of slander of a public official or public figure or where the defendant is entitled to rely upon the defense of qualified privilege. *Brown v. P.N. Hirsch & Co. Stores, Inc.*, 661 S.W.2d 587, 590 (Mo.App.1983). The proper pattern instruction for the submission of libel under such circumstances is MAI 23.06(2) which provides in paragraph first the following directions:

First, defendant (describe act such as "published a newspaper article") containing the statement (here insert the statement claimed to be libelous such as "plaintiff was a convicted felon"). The form requires the allegedly defamatory statement to be set forth in quotation marks or, if the statement is a lengthy writing the notes on use suggest it may be identified by reference to an exhibit number.

documents "accusing plaintiff of threatening to do bodily harm with a loaded weapon to his superiors," presents different issues insofar as publication is concerned. The evidence is undisputed that on September 7, 1982 Turner Lacey wrote a letter to plaintiff in response to his request for a service letter. As reasons for termination Lacey attached the Stafford memorandum and a copy of her letter of August 17, 1982, and copies of W.A. Thomas' August 26, 1982 letters to the Missouri Division of Employment Security and to plaintiff. A copy of Lacey's September 7 letter, including these attachments was mailed to Reverend Fisher, to Stephanie Stafford and to W.A. Thomas & Co., Inc. It is well settled in Missouri that intra-corporate communications do not constitute actionable publication for purposes of libel suits. *Hellesen v. Knaus Truck Lines*, 370 S.W.2d 341, 344 (Mo.1963); *Ellis v. Jewish Hosp. of St. Louis*, 581 S.W.2d 850 (Mo.App.1979); 50 Am.Jur.2d *Libel and Slander*, § 167 (1970). This precludes the publication to Stephanie Stafford and to W.A. Thomas & Co., Inc. from serving as a basis of plaintiff's cause of action. Appellants insists the same preclusion should apply insofar as the publication to Reverend Fisher. The argue the relationship between Lucas Heights Village, of which Reverend Fisher was a general partner and W.A. Thomas & Co., Inc. the managing agent of Lucas Heights Village, is that of principal and agent and therefore the rule regarding communications between employees of a corporation should be applied. We think appellants' argument is overly broad. The underlying predicate of the *Hellesen—Ellis* rule is that a corporation, incapable of communicating except through its employees, does not publish writings which are prepared in the ordinary course of business, placed in the corporate files, but not distributed outside the corporate structure. Such an act by a corporation "is but communicating with itself." *Hellesen*, at 344, quoting from *Prins v. Holland—North America Mortgage Co.*, 107 Wash. 206, 181 P. 680, 5 ALR 451.

The parties have not furnished us with any authority precisely on point concerning the effect of the communications of allegedly defamatory statements between agent and principal. Independent research has disclosed two cases which are informative. In *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir.1975), applying Alabama law, circulation of an allegedly defamatory memorandum among the employees of a parent corporation and those of a wholly-owned subsidiary corporation was found not to constitute actionable publication. A similar conclusion was reached in *Woods v. Helmi*, 758 S.W.2d 219 (Tenn.App.1988). In *Woods* an allegedly defamatory employee evaluation regarding the plaintiff, a certified registered nurse anesthetist, was sent by her superior not only to the concerned officers of the medical center where plaintiff and this defendant were both employed but also to supervisory employees of the University of Tennessee, which staffed and operated the anesthesiology department of the medical center, and to another corporation which furnished physician's services for patients of the center. The court noted the established rule in Tennessee that communications between employees of the same corporation relative to duties performed for that corporation are not to be considered as publications to third parties. Although the communications was between employees of different corporations, the court concluded no actionable publication had taken place.

This° proper exchange of information should not be inhibited by the technical nicety that a person or persons who were in the "need to know" channel were employed by different corporate entities. The responsibilities and duties of the particular parties involved take precedent over the corporate entity that pays them their salaries. We consider this a distinction without a difference insofar as applying the [*Freeman v. Dayton Scale Co.*, 159 Tenn. 413, 19 S.W.2d 255 (1929)] rule.

*Woods v. Helmi*, 758 S.W.2d at 224. This "need to know" was found because of the duty and obligation of daily administration and supervision over the providing of patient care at the medical center assumed by

the other corporations under their contracts with the medical center. Because of the potential consequences, including serious injury or even death from the failure to provide safe and proper anesthesia to patients, free and uninhibited exchange of information among all responsible parties was said to be mandatory.

Nothing in the record of the instant case suggests a comparably compelling reason for extension of the *Hellesen—Ellis* rule. The details of the contract between W.A. Thomas & Co., Inc. and the Lucas Heights Village partnership are not disclosed. It is evident that Reverend Fisher was intimately involved in the day-to-day operation of the apartment complex. He is referred to in some documents and testimony as a "sponsor," but the meaning of that term is not explained. It does not appear that Reverend Fisher had any supervisory authority over, or right to hire and fire, employees of W.A. Thomas & Co., Inc.

The record does make abundantly clear that the Lucas Heights Village partnership through Reverend Fisher, its general partner, maintained a close and vital interest in the day-to-day operations and management of the apartment complex by W.A. Thomas & Co., Inc. Mr. Thomas regularly consulted Reverend Fisher regarding management decisions. Plaintiff in his amended petition disclosed uncertainty over whether he and Stephanie Stafford were employed by W.A. Thomas & Co., Inc. or by Lucas Heights Redevelopment Corporation. Plaintiff testified that upon being told he was being fired by Stephanie Stafford he immediately went to see Reverend Fisher to discuss the matter. Similarly, when told by the Missouri Division of Employment Security that his application for unemployment compensation was denied he went directly to Reverend Fisher. Plaintiff was given a letter of recommendation by Reverend Fisher, stating that plaintiff had been employed "by our apartment complex." This evidence supports the conclusion that the publication of Turner Lacey's letter of September 7, 1982, with its attachments, to Reverend Fisher was conditionally or qualifiably privileged. Conditional or qualified privilege covers a communication made in good faith upon a subject—matter in which the person making the communication has an interest or a duty to a person having a corresponding interest or duty. *Estes v. Lawton–Byrne–Bruner Ins. Agency Co.*, 437 S.W.2d 685, 690 (Mo.App. 1969). A communication respecting the character of an employee or former employee is qualifiably privileged if made in good faith by a person having a duty to one who had a definite interest herein. *Cash v. Empire Gas Corp.*, 547 S.W.2d 830, 833 (Mo.App.1976). "Good faith" in this context refers to the actual and express malice which is required to overcome and destroy the privilege. *Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506, 513 (Mo. banc 1986). The applicability of the defense of qualified privilege is a matter of law to be decided by the court. *Id.*

Plaintiff does not dispute the applicability the defense of qualified privilege to the publication by Turner Lacey of a copy of his September 7, 1982, letter to Reverend Fisher. Plaintiff submitted his case to the jury upon instructions which required the jury to find that Turner Lacey distributed the statements "with knowledge that they were false or with reckless disregard for whether they were true or false at a time when Turner Lacey had serious doubt as to whether they were true." MAI 3.05, MAI 23.06(2). This required finding is the definition of malice or absence of good faith necessary to overcome the defense of qualified or conditional privilege. *Carter*, 714 S.W.2d at 513–14.

Appellants contend, and we agree, the record is totally devoid of evidence tending even inferentially to support a finding that Turner Lacey knew the enclosures in his letter were false or recklessly disregarded whether they were true or false when he had serious doubt that they were true. The information contained in these enclosures was basically the same information Lacey had originally received from Reverend Fisher. He was shown the gun and the bullets left with Reverend Fisher by plaintiff, which could only serve to corroborate in Mr. Lacey's mind Reverend Fish-

er's statement that plaintiff threatened to blow Stephanie's head off. After learning on September 2, 1982, at the Missouri Division of Employment Security, where Lacey was present, that Mr. Thomas accused him of threatening bodily harm with a loaded weapon to his superior, plaintiff went directly to Reverend Fisher but made no denial of the accusation. There is no evidence that plaintiff denied this accusation to anyone prior to September 7, 1982, when Mr. Lacey mailed his letter. In short, there is absolutely no evidence that when Mr. Lacey mailed the letter, he had any reason to doubt or question the information given him by Reverend Fisher, who first reported plaintiff's threat and showed Lacey plaintiff's gun. Lacey sent Reverend Fisher a copy of the letter only because he considered Reverend Fisher, as "sponsor" of the Lucas Heights Apartment complex, to be the "real" employer of all the W.A. Thomas & Co. employees who were associated with the complex.

■ The only suggestion in plaintiff's brief of evidence tending to show a lack of good faith by Turner Lacey is the latter's admission that he had no personal knowledge of a threat by plaintiff to do bodily harm to Stephanie Stafford other than what he had been told by Reverend Fisher. Lack of personal knowledge is no bar to the relating of all relevant information regarding a former employee to one who has a definite interest providing it is done in good faith, i.e. without serious doubt as to the truth of the information. *Carter v. Willert Home Products, Inc.*, 714 S.W.2d at 513; *Cash v. Empire Gas Corp.*, 547 S.W.2d at 833. Proof of falsity is not proof of malice, nor is malice shown by the defamatory nature of the charges nor by the failure to investigate. *Lami v. Pulitzer Publishing Co.*, 723 S.W.2d 458, 460 (Mo. App.1986).

Plaintiff's claim was submitted to the jury under instructions which required a finding that Turner Lacey published his letter of September 7, 1982, together with

the offending attachments with malice, i.e. with knowledge the information was false or reckless disregard for the truth or falsity of the information at a time when he had serious doubt as to whether it were true. MAI 3.05 and MAI 23.06(2). Plaintiff's failure to demonstrate by clear and convincing evidence that Turner Lacey seriously doubted the truth of the information that he distributed on September 7, 1982, constitutes a failure to prove a publication with malice, an essential element of plaintiff's claim. *Williams v. Pulitzer Broadcasting Co.*, 706 S.W.2d 508, 512 (Mo.App.1986).

■ Finally, we find reversal of the judgment on all three submitted counts mandated by plaintiff's failure to prove he sustained any damage as a result of the publication of any of the allegedly defamatory statements. The only defamatory statement mentioned in all counts of plaintiff's amended petition is that he threatened to do bodily harm with a loaded weapon to his superiors. This statement formed the basis of paragraph first of instruction # 8 submitting plaintiff's claim on Count II based upon the publication by W.A. Thomas and the first of four distinctively submitted statements in instruction # 13, submitting the claim based upon the publication by Turner Lacey. The other three statements submitted in instruction # 13 and the only three statements submitted in instruction # 19, the claim based on Stephanie Stafford's publication, were:

b) Reverend Fisher showed Mr. Lacey a gun that Mr. Washington was going to blow her head off with; or

c) Ronald Washington returned to the maintenance building and showed our other maintenance man a gun loaded and was yelling and screaming that he was going to get Stephanie; or

d) Reverend Fisher talked Ronald Washington out of shooting Stephanie Stafford and was able to take the gun away from him; and[2]

2. In view of the disposition we reach we need not address the issue of trial court error by including the unpleaded statements in the instructions, the evidence of which was admitted

as relevant to Count I, the prima facie tort—wrongful discharge claim upon which the trial court sustained a motion for directed verdict at the conclusion of all the evidence.

The only evidence of special damages related to the loss of plaintiff's employment and the residence he received as a part of his compensation. He was fired on August 17, 1982, one or two weeks prior to the publication of any of the allegedly libelous statements and there is no evidence these publications had anything to do with the termination of his employment.[3] Plaintiff admitted he knew of no publication of the information to anyone outside the inner circle of Lucas Heights Village and the other witnesses emphatically denied any such publication. Plaintiff's testimony concerning damages resulting from the·libel was confined to his expression of a totally unsubstantiated fear that perhaps at some time in the future someone might possibly learn about the statements which could possibly affect his potential for promotion in his present employment with the United States Postal Service or his obtaining other employment.

Plaintiff contends the statements amount to a false accusation of a criminal act, defame him in his business or trade and damage his reputation, therefore entitling him to presumed damages. It is not a crime to threaten harm to a person not present at the time the threat is being made. Nor is it a crime to possess an unconcealed weapon. The writings, which do not "impute to plaintiff a want of knowledge, skill, capacity, or fitness to perform the duties of [a supervisor of maintenance and resident manager of an apartment complex] which he claims to be his trade" and which do "not touch upon plaintiff's qualifications or ability to perform his work," do not constitute defamation in his calling, trade, or business. *Swafford v. Miller*, 711 S.W.2d 211, 215 (Mo.App.1986), quoting from *Jacobs v. Trans Continental and Western Air*, 358 Mo. 674, 216 S.W.2d 523, 526 (1948). Plaintiff can hardly claim damage to his reputation as a result of a publication of the statements since the only evidence of a publication not absolutely privileged was to Reverend Fisher (Joseph Brown did not testify). Reverend Fisher was the one who originated the circulation among those involved with Lucas Heights Village of the story about plaintiff and his gun and his threat. Plaintiff's reputation in the eyes of Reverend Fisher could not be lessened by reading information of which he was the original source.

For the reasons stated above the judgment of the trial court is reversed.

PUDLOWSKI, C.J., and SIMEONE, Senior Judge, concur.

---

**3.** We also need not address appellants' contentions of trial court error in permitting plaintiff's attorney to argue to the jury damages resulting from the termination of his employment and refusing to give a withdrawal instruction regarding plaintiff's discharge.