**Bryan M. DEAN, Appellant,**

v.

**Jeanne WISSMANN, et al., Respondent.**

**No. WD 55832.**

Missouri Court of Appeals,
Western District.

May 11, 1999:

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Ronald Baker, Kansas City, for Appellant.

George P. Coughlin, Kansas City, for respondents.

Before: Presiding Judge HAROLD L. LOWENSTEIN, Chief Judge PATRICIA BRECKENRIDGE and Judge PAUL SPINDEN.

LOWENSTEIN, Judge.

The plaintiff, Bryan Dean was a nursing student at Central Missouri State University (CMSU). CMSU, located in Warrensburg, is part of the state university system and is under the control and management of a board of governors. Section 174.040 and 174.120, RSMo 1994.[1] Dean sued CMSU, Arthur Rosser the dean of students, and Jeanne Wissmann, an assistant professor of nursing, claiming that Wissmann wrongfully accused him of academic dishonesty (stealing and attempting to steal tests before exams), in her Pharmacology class; libel; battery with sexual harassment (claiming Professor Wissmann made unwanted advances), and battery. This appeal relates only to the circuit court's sustaining the motion for partial summary judgment on count two, the libel count, granted in favor of Wissmann. (CMSU and Wissmann were the only defendants named in the libel count.) Rule 74.01(b).[2]

---

1. All further statutory references will be to the Revised Statutes of Missouri, 1994.

2. The court notes that the motion for summary judgment was filed only by defendant

The facts on this point are relatively straightforward. On April 19, 1994, Professor Wissmann wrote a confidential letter to the assistant vice president for student affairs, with copies to the plaintiff, the interim chair of the Nursing Department, and the dean of the college in which the School of Nursing is located. The letter stated that Dean and two other students, while on a class break and while Wissmann was in the restroom, stole a test which was to be given by Wissmann on April 11, and that plaintiff Dean and the two other students also attempted to steal a test to be given on April 19th. The letter also said Wissmann had conferred with three students who saw, and then reported to her, that Dean and two other students took the exams from Wissmann's purse. The letter related she had given plaintiff Dean a failing grade, disenrolled him from the class, and asked that Dean be removed from the nursing program. Dean's petition claimed the letter sent to the administrators constituted a publishing of the libel. Dean has admitted that Wissmann and CMSU had a duty to deal with dishonesty and cheating, but denied having been involved with the theft and attempted theft of the two tests.

Section 174.120 grants the board of CMSU "full power and authority to adopt all needful rules and regulations for the guidance and supervision of the conduct of all students."

> CMSU had adopted a handbook which states: If a faculty member believes that a student has ... cheated on an examination or other assigned work ... [the faculty member should] schedule an immediate ... conference with the student in private. Within seven days following the conference the faculty member should make a written report of the situation and the disposition reached ... A copy of the summary statement should be sent to the office of the Vice President for Student Affairs.

Wissmann. While both she and CMSU were the named defendants on the libel count, the legal file shows only Wissmann prayed for and was granted summary judgment. Dispo-

There is no issue here of a failure of Wissmann to have first held a conference with Dean; the portion of the petition under review is for libel because of the accusations in the letter and for the publication by Wissmann by sending it to the others shown above. There was no assertion the letter was seen by anyone other than those administrators (chair of the Nursing School, dean of the college, and VP of Student Affairs to whom Wissmann copied her statement.)

Wissmann's motion sought summary judgment on the ground that missing from the facts was the element of publication in that the Wissmann letter to the vice-president of student affairs, the chairperson of the department and the dean, constituted an "intra-corporate communication." Relying on *Walter v. Davidson*, 214 Ga. 187, 104 S.E.2d 113 (1958), the trial judge granted the motion, holding a professor's letter to superiors or administrators on the subject of a report of student dishonesty did not constitute a publication.

Appellate review here is essentially de novo, and is appropriate since there are no genuine issues of material fact. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993).

■ One of the essential elements of the tort of libel is publication, which is simply the communication of defamatory matter to a third person. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996); *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 624 (Mo. banc 1981). Our courts first recognized the doctrine of intra-corporate immunity in the case of *Hellesen v. Knaus Truck Lines, Inc.*, 370 S.W.2d 341 (Mo.1963). The communications in *Hellesen* consisted of the corporation placing memorandums in its own files. The rationale for this doctrine was that "communications between officers of the same corporation in the due and regular

sition of this appeal should, however, render the count as to the remaining defendant subject to the same disposition.

course of the corporate business ... are not publications to third persons," and is based on the legal premise that a corporation can only communicate through its employees in the regular course of business and distributed in the corporate structure, so that the corporation "is but communicating with itself." 370 S.W.2d at 344; *Lovelace v. Long John Silver's, Inc.*, 841 S.W.2d 682, 684 (Mo.App.1992). In *Lovelace*, which involved intra-corporate communications about the plaintiff's sexual harassment of the company's employees, this court stated the corporation needed to communicate with personnel to inform "itself concerning the performances and conduct of employees in the due and regular course of the corporate business. A corporation has an interest to see that business runs efficiently." *Id.* at 685. Part of the *Lovelace* libel suit was against three employees who complained of harassment to management, and the remainder was directed at the corporation, which sent out information of the plaintiff's actions to other employees. As pertinent here, and expanding upon *Hellesen*, this court held the employee statements concerning Lovelace, which were made to management, fell within the intra-corporate immunity rule. *Id.* at 685. In the same vein, the Eastern District in *Perez v. Boatmen's National Bank of St. Louis*, 788 S.W.2d 296, 300 (Mo.App.1990), went beyond *Hellesen* in ruling a communication between two employees of different branches of the same bank should be within the confines of the intra-corporation communication immunity rule. The court held that statements of internal communication to investigate a potentially harmful situation could not "be considered a publication to a third person." *Id.* at 300. It should be noted that communications by the corporation's officers or supervisors to non-supervisory employees constitute a publication for purposes of a defamation action. *Rice v. Hodapp, supra, at* 243.

■ Dean's first point is short but confusing. He asserts the intra-corporate rule does not apply to this case since CMSU, a state university, is not a corpora-

tion. His only citation to authority is language in *Koch v. Board of Regents of Northwest Missouri State College*, 256 S.W.2d 785, 788 (Mo.1953), which described the state universities described in chapter 174 as being quasi-public corporations. He seems to imply that since the governing board of CMSU is not a corporation, then the actions of Wissmann and her superiors to whom she made the reports in question, do not fall in the area of a corporation communicating with itself. Section 174.040(1) allows the board of CMSU to be sued, and the previously quoted portions of chapter 174 give the board general control for running the institution, but it remains that CMSU is a quasi-public corporation, and is not a separate entity from the board. *Board of Regents of Southwest Missouri State University, v. Harriman*, 792 S.W.2d 388, 391(Mo.App.1990). The fact that the board is required by law to be sued on behalf of CMSU does not detract from the issue here—that this university is a quasi-public corporation, and must communicate on matters of student honesty the same as a private, for profit corporation. This point is denied.

■ Dean's second point contends that since defendant Wissmann is a professor, and not a member of the board of regents, her actions cannot be protected under the intra-corporate communication rule since the rule only applies to the benefit of the corporation. This point suffers from the same problem as the first, in that the actions of reporting matters in the course of business that affect the purpose and business of the corporation, which are reported to appropriate personnel of officers of the corporation, are not considered publications of allegedly defamatory remarks. If Dean's point was correct, that only the communications between the board of regents were subject to the rule, then no corporation could ever receive communications from employees which concerned the business of the corporation, without itself being liable for publication, and the employee himself or herself would suffer the

consequences of reporting any matter to appropriate persons or departments in the corporate entity. To hold Wissmann's report a publication, would reverse the holdings of this court in *Lovelace,* vis-à-vis employees. The point is denied.

■ The real issue here is the third point raised by Dean—should the intra-corporate immunity rule be applied to a state university? Missouri has not addressed· the question, but this court answers that question in the affirmative. The Official Manual, State of Missouri, 1997–8 shows CMSU to have over eleven thousand students and page after page of personnel and administrators. As stated earlier, it is a quasi-public corporation, and must carry out its duties and functions much as a private corporate entity would. Communications within CMSU should be considered intra-corporate communications with regard to defamation actions, the same as any corporate defendant. Likewise, employees such as Wissmann, should not have been considered to have published a defamatory statement by reporting student cheating to superiors.

The trial court was correct in relying on the rationale of *Walter v. Davidson, supra. Walter* involved a college faculty member's report of a student stealing in a dormitory. The opinion on whether to determine that the report to administration was a publication, started with the question: "Will the law allow privileges in this matter to officers of a corporation engaged in business for profit, and deny it to officers of a college engaged" in the matter of education and training? The opinion answered that question, stating that faculty members are entitled to the same protection as those persons in the private sector. 104 S.E.2d at 115. The Court said statements by faculty to each other about student stealing, "are not publications or communications which are essential to constitute actionable slander." Statements by either in the hearing of the other concerning such matters are the legal equivalent of speaking only to one's self and are not publications. *Id.* at 116.

In extending the intra-corporate immunity rule first set out in *Hellesen* to communications within a state university, the court does nothing to expand the doctrine in the state university setting to alter the limitations set out in *Rice* and *Lovelace.* In the facts here, the court takes cognizance that the list of persons Wissmann notified went beyond the requirements of the CMSU handbook. However, the additional persons who received copies, the dean and a vice-president, did not constitute a publication. Wissmann here attempted to notify necessary persons in the university hierarchy of this situation. There is no allegation that the two persons not specifically required to get her report, did not have a direct interest in the matter, or that their being sent a copy was somehow beyond the necessity of the circumstances. cf. *Lovelace, supra,* 841 S.W.2d at 684–85.

The judgment is affirmed.

All concur.