**Christopher R. BOYD,
Plaintiff/Appellant,**

v.

**SCHWAN'S SALES ENTERPRISES,
INC., and Rufus Solter, Defen-
dants/Respondents.**

No. 23334.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 4, 2000.

Mark M. Wenner, Christopher W. Hinckley, Clayton, for Plaintiff/Appellant.

Paul D. Seyferth, Eric E. Packel, for Defendants/Respondents.

KERRY L. MONTGOMERY, Judge.

Christopher R. Boyd (Plaintiff) appeals from a summary judgment in favor of Schwan's Sales Enterprises, Inc., and Rufus Solter (collectively referred to as Defendants and individually referred to as

Schwan's or Solter). Plaintiff's Second Amended Petition asserted claims against Defendants for common law slander (Count I), statutory slander under § 537.110 [1] (Count II), and violation of § 290.140, the service letter statute (Count III).

Defendants' Motion for Summary Judgment alleged that the undisputed material facts show that (1) Plaintiff has not suffered actual or punitive damages for any alleged defamation, and (2) Plaintiff is not entitled to punitive damages under § 290.140. Plaintiff filed an appropriate response. Subsequently, the trial court found that Defendants' motion "should be granted" and entered a judgment for Defendants "on all claims."

▮ Plaintiff's first two points assert trial court error in granting summary judgment on his common law and statutory slander claims. In essence, Plaintiff alleges the record reveals that a factual dispute exists on whether Plaintiff suffered actual and punitive damages resulting from Solter's statements.[2] The last point pertains to whether the record shows a factual dispute on Plaintiff's right to punitive damages for an alleged violation of the service letter statute.

When considering appeals from summary judgment, we review the record in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Appellate review is essentially *de novo. Id.* A defendant may establish a right to judgment as a matter of law by showing that the plaintiff, after an adequate period of discovery, has not been able to produce and will not be able to produce, sufficient evidence to allow the trier of fact to find the existence of any one of the elements of plaintiff's claim. *Id.* at 381. Facts set forth by affidavit or otherwise in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's response to the motion. *Id.* at 376.

The showing required of the non-movant in the face of a properly pleaded summary judgment motion does not change depending upon whether the non-movant is a "claimant" or "defending party." The non-movant never needs to establish a right to judgment as a matter of law; the non-movant need only show that there is a genuine dispute as to the facts underlying the *movant's* right to judgment. *ITT Commercial Fin. Corp.* at 381–82.

The evidence viewed in the light most favorable to Plaintiff reveals that he was employed by Schwan's. Solter was Plaintiff's direct supervisor. Orville Martin, a new employee at Schwan's, and his wife told Solter on or about April 16, 1997, that Plaintiff had been involved in an "attempted rape" with Martins' 14–year–old stepdaughter. According to Solter, this information caused him to call Police Chief Bill Fetters at the St. James, Missouri, Police Department. Solter's deposition testimony indicates that Fetters told him that Plaintiff had been arrested for sexual assault on a 14–year–old girl; that Plaintiff failed a polygraph test, and the girl passed such a test; and that no warrant was issued because the girl would not allow her parents to press charges. However, Fetters testified in his deposition that "I don't recall having a phone conversation with

---

**1.** Statutory references are to RSMo 1994 unless otherwise indicated.

**2.** Plaintiff's third point alleges trial court error in granting Defendants' summary judgment on Plaintiff's statutory slander claim because the record shows a factual dispute on whether Solter's statement fell within the prohibition of § 537.110. Defendant's motion for summary judgment did not raise this issue. Thus, the trial court did not rule as Plaintiff suggests. We do not review this point because our review is confined to the issues raised before the trial court by the motion for summary judgment. *D.E. Properties Corp. v. Food For Less*, 859 S.W.2d 197, 201 (Mo.App. 1993).

[Solter] at all." Further, he testified that Plaintiff was never arrested. Therefore, it would have been impossible for him to tell Solter otherwise.

Solter terminated Plaintiff's employment on April 16, 1997, based on the information he received and other recent policy violations committed by Plaintiff, which included giving Schwan's a bad check. Plaintiff's petition alleges that after he was fired, Solter told prospective employers of Plaintiff and an employment agency seeking employment for him that Plaintiff "had been convicted of rape" and had "done time in prison" for the crime. Solter admits that he gave information regarding the Plaintiff to a prospective employer of Plaintiff and to Sarah Holleran, an employment agency employee. According to Holleran's deposition, Solter told her that Plaintiff had been "involved in a rape" and that she should check with the St. James Police Department before proceeding further.

Plaintiff sent Schwan's a service letter request on April 24, 1997. Shirley Greenfield, a Schwan's employee, responded with a "standard letter" which is sent in response to such request. Schwan's letter is further discussed in Plaintiff's last point.

In his deposition, Plaintiff stated he was depressed and embarrassed over losing his job. He testified he suffered from insomnia starting about a month after his termination. As a result, it was difficult for him to wake up in the morning. His depression also contributed to this problem.

Plaintiff sought treatment from FOCUS counseling services beginning on August 12, 1997. Plaintiff advised his doctor and counselor that he started feeling depressed because he lost his job over false allegations of raping a girl. His medical records include a psychiatric evaluation by Dr. Saha. This evaluation confirmed Plaintiff's complaints regarding his depression

over the false allegations and stated that Plaintiff suffered from sleeplessness, poor appetite, and he sometimes felt like crying. Dr. Saha prescribed Zoloft and Lithobid for Plaintiff's treatment plan.

The salient issue involved in the first two points on appeal is whether Plaintiff produced sufficient evidence to show the existence of a genuine issue of material facts relating to any actual or punitive damages suffered by Plaintiff on his slander claims. *See* Rule 74.04(c)(3).

In the past, the law distinguished between *per se* and *per quod* slander cases. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 308 (Mo. banc 1993).

At common law, slander *per se* encompassed false statements that the plaintiff was guilty of a crime, afflicted with a loathsome disease, or unchaste, as well as false statements that concerned the plaintiff's ability to engage in his or her occupation or business. In such cases the plaintiff was not required to plead damages, as damages were presumed from the nature of the defamation. Where the words were not actionable as slander *per se*, the tort was referred to as slander *per quod* and the plaintiff was required to plead and prove, in addition, "special damages." Special damages in this sense meant a loss of money or of some advantage capable of being assessed in monetary value, such as the loss of a marriage, employment, income, profits, or even gratuitous hospitality.

*Id.* (citation omitted.)

However, in *Nazeri*, the Missouri Supreme Court held that the common law distinction between *per se* and *per quod* damages should no longer be followed. *Id.* at 313. Therefore, a plaintiff must now prove actual damages in all defamation cases. *Id.*[3] Presently, a "plaintiff need only to plead and prove the unified defamation elements set out in [MAI 4th

---

**3.** Modern law combines libel and slander as the generic tort of defamation. *Nazeri,* 860

S.W.2d at 308.

23.10(1) ] and [23.10(2) ]." *Id.* Further, the court said that the controlling damage instructions are MAI 4th 4.15 and 4.16, allowing for recovery of actual and punitive damages if supported by the evidence. *Id.* at n. 4.[4]

Citing to *Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506, 510-11 (Mo. banc 1986), the *Nazeri* court said that "[d]amages for mental suffering are recoverable in a slander action." 860 S.W.2d at 316. In *Carter*, a jury awarded plaintiff $12,000 actual damages and $35,000 punitive damages on her petition for slander. The defendant, plaintiff's employer, orally provided false information on plaintiff's credit history to a lending company where plaintiff had applied for a loan. Upon learning of defendant's report, plaintiff was "speechless" and started "crying." Plaintiff testified she was hurt, embarrassed, and humiliated. *Id.* at 508. On appeal, the Supreme Court said that "the plaintiff is entitled to recover such actual damages as may have resulted from the slander, including damages for emotional distress." *Id.* at 510. The Court upheld the actual damage award after stating that "the jury could reasonably have assessed plaintiff's emotional damages at $12,000." *Id.*

■ Here, Plaintiff's evidence in opposition to the motion for summary judgment is more substantial than the evidence supporting the award for emotional distress in *Carter*. Therefore, the trial court erred in granting summary judgment on Counts I and II based on Defendants' allegation that Plaintiff could show no actual damage.

■ We acknowledge Defendants' assertion that Plaintiff's actual damages for emotional distress must be "medically diagnosable and of sufficient severity so as to be medically significant." For this

proposition, Defendants rely on cases involving the tort of intentional infliction of emotional distress which arose after *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983). Defendant's assertion accurately states the second element of that tort. *Id.* at 772-73. However, Defendants fail to recognize that *Nazeri* specifically holds that the tort of intentional infliction of emotional distress "does not lie when the offending conduct consists *only* of a defamation." 860 S.W.2d at 316. Here, the offending conduct was only a defamation.

■ As to Plaintiff's claim for punitive damages under Counts I and II, we find that a factual dispute exists on whether Plaintiff suffered such damages. In order to recover punitive damages, a plaintiff must prove that "the statements were made with knowledge that they were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubts as to whether they were true." *Carter*, 714 S.W.2d at 512; MAI 4th 4.15.

■ In this case, Solter claimed he called Police Chief Fetters to verify that Plaintiff was involved in a rape. Fetters testified he had no memory of such a call from Solter. In addition, Solter admitted in his deposition that he had "some doubts as to whether the offense actually occurred." The conflicting evidence on Solter's call to Fetters and Solter's admitted doubts create a factual dispute on punitive damages on Plaintiff's defamation claims. On this evidence, a jury could believe that Solter never called Fetters and that Solter doubted whether a rape occurred. Such a belief would allow a finding that Solter acted recklessly when he told Sarah Holleran that Plaintiff had been involved in a rape. Summary judgment on this issue was improper.[5]

---

4. MAI 4th 23.10(1) and 4.15 are the proper instructions in this case since Plaintiff is not a public official or public figure.

5. Whether Plaintiff can recover on both Counts I and II is not an issue before us.

However, Plaintiff is only entitled to one recovery for the same injury. *Taylor v. Chapman*, 927 S.W.2d 542, 545 (Mo.App.1996). The same alleged defamatory remarks form the basis of Plaintiff's claims in both counts.

We next address Plaintiff's last point concerning his claim in Count III for violation of the service letter statute. Plaintiff argues that his evidence showed the existence of a factual dispute regarding his punitive damage claim. We agree.

 Section 290.140.1 requires an employer to issue a letter which includes: (1) the nature and character of services rendered by the employee to the corporation, (2) the duration of the employment service, (3) the true cause, if any, the employee was discharged or voluntarily left service, and (4) the signature of the superintendent or manager. *Ball v. American Greetings Corp.*, 752 S.W.2d 814, 820 (Mo.App.1988). Punitive damages are recoverable in the event that the evidence establishes the employer did not issue the requested letter. *Id.* at 821. "An employer fails to issue a service letter if the letter fails to address any of the requirements of § 290.140.1." *Uhle v. Sachs Elec.*, 831 S.W.2d 774, 776 (Mo.App. 1992).

Schwan's letter to Plaintiff did not comply with the requirements of the statute in that it (1) failed to characterize Plaintiff's service, (2) gave incorrect dates of employment, and (3) failed to state the cause of Plaintiff's discharge. Failure to state the cause for discharge standing alone constitutes a refusal to issue the requested letter. *Ball*, 752 S.W.2d at 821.

In *J & J Home Builders, Inc. v. Hasty*, 989 S.W.2d 614 (Mo.App.1999), a jury awarded plaintiff $1 in actual damages and $13,750 in punitive damages for defendant's violation of the service letter statute. On appeal, defendant claimed trial court error in submitting the issue of punitive damages because there was no evidence of malice. The appellate court determined that defendant's failure to sign the letter amounted to non-issuance. *Id.* at 617. The court held that the trial court properly submitted the issue of punitive damages because "the jury could reasonably conclude that failing to sign the letter,

sending the letter to [plaintiff's] former address two weeks after it was prepared and providing an erroneous date of termination was outrageous because of [defendant's] reckless indifference for the rights of [plaintiff] under the statute." *Id.*

Schwan's letter to Plaintiff is almost identical to the service letter in *J & J* which was found sufficient to allow submission of punitive damages. Therefore, Plaintiff's evidence is sufficient to show a genuine issue of facts on this issue. Accordingly, the trial court erred in entering summary judgment on Count III.

The summary judgment is reversed, and the cause is remanded for further proceedings.

PARRISH, P.J., and SHRUM, J., concur.