**Richard BALKE, Appellant,**

v.

**Harold REAM, Respondent.**

**No. WD 58175.**

Missouri Court of Appeals,
Western District.

Oct. 24, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 2000.

Application for Transfer Denied
Jan. 23, 2001.

George S. Miller, Gladstone, for Appellant.

Mark T. Kempton, Sedalia, for Respondent.

Before Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge NEWTON.

LOWENSTEIN, Judge.

This appeal followed the grant of summary judgment in favor of the defendant Ream on Balke's petition for damages, which was premised on Ream's violation of Section 542.400–.424,[1] Missouri's wiretap statute (creating a class D felony for certain recordings of telephone conversations). This opinion is the fourth appellate decision stemming from a long-standing controversy between Richard Balke, a dairy farmer his electrical supplier, Central Missouri Electric Cooperative (CMEC). Harold Ream, the respondent, is the general manager of CMEC. A background of the prior and pending lawsuits is necessary to understand the genesis of this action for damages resulting from Ream's recording of telephone conversations he had with Balke.

A distillation of the facts in *Central Missouri Elec. Coop. v. Balke*, 18 S.W.3d 46 (Mo.App.2000), shows that in 1982 CMEC attempted to upgrade service to the Balke farm, but the changes were later found to

---

1. All statutory references are to the 1994 Revised Statutes of Missouri unless otherwise indicated.

have resulted in severe damage to the dairy herd. Ream, the manager of CMEC, negotiated with Balke about continued service, charges for service, and the settlement of damages sustained by Balke. CMEC agreed not to bill Balke for electricity, but rather to wait for payment until resolution of Balke's damage claim. Because the damage claim was not settled by 1992, Balke filed suit for damages. After a trial, a verdict for Balke was returned in excess of $783,000. CMEC appealed. The verdict on that judgment was reversed in *Balke v. Central Missouri Elec. Coop.*, 966 S.W.2d 15 (Mo.App.1997). However, during the pendency of that appeal, CMEC requested a preference over Balke's creditors for electric services owed to it by Balke. Balke refused, and electricity to the farm was cut off for more than a year. In July of 1997, CMEC filed suit for $20,000 in back charges. Balke counterclaimed for damages for wrongful termination of electrical service. After summary judgment and a directed verdict were both entered in favor of CMEC, Balke appealed. This court reversed both judgments and remanded the collection and wrongful termination actions for trial. *Central Missouri Elec. Coop.*, 18 S.W.3d at 53.

It is against this backdrop that the current action emerged. In the summer of 1997, around the time the CMEC collection suit was filed, Balke attempted to call Ream who was not at home. Ream returned the call and, without telling Balke, tape-recorded the lengthy and somewhat spirited conversation.[2] The conversation covered the pending disputes and centered on Balke's concerns with his treatment by CMEC, its staff, and the lawyers involved.

Balke filed a petition in May of 1998 seeking damages arising from actions in violation of the Missouri Wiretap Law, specifically § 542.402, which states in pertinent part:

**2.** There were actually two calls involved, but only one is significant for purposes of this

1. Except as otherwise specifically provided in sections 542.400 to 542.424, a person is guilty of a class D felony and upon conviction shall be punished as provided by law, if such person:

(1) Knowingly intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire communication;

\* \* \*

(3) Knowingly *discloses, or endeavors* to disclose, to any other person the contents of any wire communication, when he knows or has reason to know that the information was obtained through the interception of a wire communication in violation of this subsection; or

\* \* \*

2. It is not unlawful under the provisions of sections 542.400 to 542.424:

\* \* \*

(3) For a person not acting under law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act. (Emphasis added.)

*See Phillips v. American Motorist Ins., Co.*, 996 S.W.2d 584 (Mo.App.1999).

Balke's petition alleged that phone communications between Balke and Ream, in early June of 1997, were recorded by Ream without Ream having obtained Balke's consent and without Balke's knowledge. The petition further alleged that the recordings were willful and that the contents were disclosed to third persons. Ream sought and was granted a judgment of dismissal. The trial court did

opinion.

not specify whether the dismissal was with or without prejudice. In *Balke v. Ream*, 983 S.W.2d 579 (Mo.App.1998), the initial issue addressed was jurisdiction because generally, if a dismissal is truly without prejudice it is not a final and appealable judgment. *Id.* at 580 (citing *Wilson v. Unistrut Service Co.*, 858 S.W.2d 729, 731 (Mo.App.1993)). The opinion noted that the exception to this general rule is if the dismissal had the practical effect of terminating the suit in the form pleaded in the petition. *Id.* This court stated that the dismissed petition raised no allegation that Ream had a criminal or tortious purpose for recording the conversations ..., but left open the question whether Balke *may* be entitled to relief if he can supplement his petition with allegations, and prove facts, establishing that [Ream] had the requisite criminal or tortious purpose. *Id.* at 581. This court held that the dismissal was without prejudice and allowed Balke to return to circuit court to cure the reason for the dismissal and to plead and prove Ream had a criminal or tortious purpose for his acts. *Id.* at 582. After remand, Balke amended his petition and summary judgment was granted to Ream. It is the grant of summary judgment in favor of Ream that comprises the appeal now before this court.

The latest Balke petition, filed in September 1999, did not recount the conversation(s), but did assert that Ream intercepted and recorded the communications with a tortious purpose and constituted: a) an invasion of privacy, b) interference with Balke's attorney client relationship in pending litigation, c) an attempt to obtain information in violation of the attorney-client privilege, d) a willful attempt to injure Balke, e) an attempt to interfere with a contractual and business relationship with his attorney, f) an intentional infliction of emotional distress, and g) interfer-

ence with [Balke's] pending causes of action which constitutes a trespass on [Balke's] personal property.[3,4]

A synopsis of the facts submitted to the court for the summary judgment determination is in order. In June or July 1997, while the collection and wrongful termination actions were active in circuit court (the appeal of which is contained in *Central Missouri Elec. Coop.*, 18 S.W.3d 46), Balke called Ream at CMEC headquarters and left messages. Ream returned the calls, the most notable of which took place after 10 p.m. on a Saturday night. Balke dominated the conversation. He discussed the strained relations between the parties and spoke about trying to work around the attorneys to resolve the effects of the recent discontinuation by CMEC of electrical service to his farm. Ream recorded this call, unbeknownst to Balke. Before Ream's scheduled deposition in the collection and termination suit was to be taken in September of 1997, Ream told CMEC's counsel of his actions. Ream's actions in recording the calls were reported to Balke's counsel who questioned Ream at the deposition, and was later provided transcripts of the extensive conversation. Ream's affidavit in this action stated that the tape never left his home, nor was it played for anyone until he gave it to his lawyer. In his affidavit attached to CMEC's motion for summary judgment, Ream stated that he thought it was legal for him to record the conversations and that his only purpose in making the recordings was to ensure an accurate record was made of those conversations. In his deposition in this case, Ream said he was aware the tape might have some use later.

Review of the grant of summary judgment is governed by *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376–78 (Mo.

---

**3.** Balke's appeal does not include the tort of trespass on personal property.

**4.** The references to pending litigation and the relationship between Balke and his attorney

are presumed to be in the suit for collection of electric bills and for wrongful termination of service. *Central Missouri Elec. Coop.*, 18 S.W.3d 46.

banc 1993); therefore the record will be viewed in a light most favorable to Balke to determine whether there are genuine issues of material fact and whether the judgment was correct as a matter of law.

### I.

Balke asserts in his first point that the trial court should have granted his motion to strike the portions of the Ream affidavit which contained legal conclusions rather than facts. He cites *First Community Bank v. Western Surety Co.*, 878 S.W.2d 887, 890 (Mo.App.1994), which states that [a]n affidavit in support of a motion for summary judgment is to state facts and not conclusions. This reasoning was premised on *Bakewell v. Missouri State Employees' Retirement*, 668 S.W.2d 224, 227 (Mo.App.1984), which held that language in an affidavit that the denial of the plaintiff's claim for medical insurance was not arbitrary and capricious, was insufficient for purposes of an affidavit in support of summary judgment. Balke recognizes Ream's testimony—that Ream did not feel recording the conversations was illegal and that he did not make the recordings for the purpose of committing tortious acts—was made to counteract the Balke petition which, to find a violation of the wiretap statute, required Ream to have recorded the telephone call for a tortious purpose.

■ This court need not make a determination of whether the testimony was conclusory or otherwise inadmissible for the purposes of determining the propriety of granting summary judgment. Here, there is no showing by Balke that the trial court relied on these contested portions of the Ream affidavit in its final decision. *See Mullenix–St. Charles Properties, L.P., v. City of St. Charles*, 983 S.W.2d 550, 557 (Mo.App.1999). As will be discussed in the second point, *infra*, it appears that the ruling was based on other portions of the affidavit which stated there was no use or display of the tapes and that no one listened to the tapes prior to the time they

were turned over to the CMEC attorney, pursuant to the Balke request for discovery. Balke presented no evidence in his response to the motion for summary judgment of any other publication by Ream of the tapes. This point is denied.

### II.

This court now turns to the issue of whether summary judgment in favor of Ream was proper under Rule 74.04. It must first be noted that there has been no assertion in this case that the wiretap law, § 542.400 et. seq., a criminal statute, may not serve as the basis for a tort action. Likewise, there has been no assertion by the plaintiff that Ream had a criminal purpose in making the recordings. Based upon the language in § 542.402.2(3) and the earlier dismissal for failure to specify the tortious purpose of the recordings, it must be determined whether the plaintiff has shown sufficient evidence to withstand a motion for summary judgment based on the assertion that there has been no evidence to show that the defendant intercepted the communication for the purpose of committing a tortious act. An examination of the facts and the torts alleged in the Balke petition is necessary to determine whether Balke produced sufficient evidence to present a jury with a fact question as to whether any tortious purpose can be attributed to Ream.

### A. Invasion of Privacy

Balke's petition merely uses the caption of right of privacy for the first of the torts he claims were committed by Ream. As set out in *The Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 497–99 (Mo.App. 1990), a common-law action for an invasion of privacy encompasses four distinct torts. Those actions are, generally, a) unreasonable intrusion upon the seclusion of another, b) appropriation of the other's name or likeness, c) unreasonable publicity of the other's private life, and d) publicity that unreasonably places the other in a false light. *Id.* at 498. The Balke peti-

tion asserts Ream disclosed the information obtained from a private telephone conversation ... to individuals who were not parties to the conversation ... with the result that plaintiff suffered humiliation ... In his brief, Balke characterizes the conversations as attempts by Ream to be like a wolf in sheep's clothing to gain Balke's confidence and elicit information to be used in the pending lawsuit, thereby invading Balke's privacy.

In order to rule on this point, this court will assume the specific action envisioned by the privacy cause of action is the tort described above in c) the public disclosure of private facts. This tort contains the following elements: 1) publication or publicity, 2) absent any waiver or privilege, 3) of private matters in which the public has no legitimate interests, 4) so as to bring shame or humiliation to a person of ordinary sensibilities. *Childs v. Williams*, 825 S.W.2d 4, 7 (Mo.App.1992). A summary judgment movant need not controvert all elements of a non-movant's claim to establish a right to summary judgment. *Chancellor Dev. Co. v. Brand*, 896 S.W.2d 672, 675 (Mo.App.1995). In other words, to be successful, Ream may controvert any one of the elements of this tort action.

The element of publication means a communication to the public in general or to a large number of persons. *St. Anthony's Medical Center v. H.S.H.*, 974 S.W.2d 606, 610 (Mo.App.1998). The critical aspect of the publication requirement is a public disclosure, i.e. communications that are available to the general public or have a likelihood of becoming public knowledge. *Id.* In *St. Anthony's*, the hospital released a patient's psychiatric records pursuant to a court order in a dissolution proceeding. The court upheld summary judgment for the hospital on the basis of a failure of the patient to show the element of publication. *Id.* at 611. Similarly, in *Childs*, the Eastern District upheld a judgment which denied a plaintiff a privacy invasion claim against a psycholo-

gist who had sent a report of an examination of the employee to his employer. 825 S.W.2d at 11. The examination had been made as part of an Employee Assistance Program. *Id.* The court in *Childs* held that the letter to the employee's division supervisor, having been reviewed only by the supervisor and others with a legitimate and direct interest in the employment in question, did not constitute a publication. *Id.* at 9. Balke's reliance on *Boyd v. Schwan's Sales Enterprises, Inc.*, 23 S.W.3d 261 (Mo.App.2000), is misplaced. In *Boyd*, the employer, after the time of discharge of the employee, told several prospective employers Boyd had been convicted of raping a fourteen-year-old girl. *Boyd* is not applicable to the question of publication by Ream. Here, there was no publication to uphold an invasion of privacy claim.

### B. Interference With Attorney–Client Relationship

Balke also alleges the recording constituted an improper interference with his attorney-client relationship. Without going through the entire transcript of the primary conversation intercepted here, suffice it to say that Balke was the one who railed against attorneys on both sides of this case. Balke even suggested that CMEC fire its attorney. These facts would not support any claim that Ream interfered with Balke's attorney-client relationship at all, much less that he used the recording to do so.

### C. Prima Facie Tort

The elements of prima facie tort are: 1) an intentional lawful act by the defendant, 2) an intent to cause injury to the plaintiff, 3) injury to the plaintiff, and 4) an absence of or insufficient justification for the defendant's act. *Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo.App. 1980). Balke has contended from the very beginning of this action that the recordings by Ream were *unlawful* under the wiretap law. The first element of prima facie tort

requires the act of the defendant to be lawful. Balke indirectly asserts this element is satisfied because the *defendant* contends the recordings were lawful. However, at oral argument Balke admitted there was little chance of success in pleading this tort. This tort action is not available to Balke.

### D. Intention Infliction of Emotional Distress

The elements plaintiff must show are that: 1) the defendant's conduct was extreme and outrageous, 2) the defendant acted in an intentional or reckless manner, and 3) those acts caused plaintiff severe emotional distress resulting in bodily harm. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. banc 1993). It is not enough that the defendant may have acted with tortious or even criminal intent; liability under this cause of action will lie only where the conduct has been so outrageous in character and extreme in degree as to be beyond the bounds of decency and be regarded as atrocious, and intolerable in a civilized society. *St. Anthony's,* 974 S.W.2d at 611. Balke points to evidence that the call was after 10 p.m. at night and that when he found out about the recording he went to the V.A. Hospital. The record also discloses, however, that it was Balke who made the late-night call, not Ream, and that Ream kept the tape recording private until it became relevant to discovery in the parties' related litigation. Standing alone, with no other evidence, this court concludes that the trial court was correct in granting the summary judgment motion.

The judgment of the trial court is affirmed.

All concur.